# Martha Mann's Appeal. Estate of Jacob S. Mann.

*Interest of widow in land not changed into personalty by partition in the Orphans' Court.—Effect of Act of 1848 on vested right of husband.—Assent of wife to use of her funds, when inferred.—Competency of witness.*

1. The dower interest of a widow in the land of her deceased husband is not changed into personalty by proceedings in partition by which it is valued: the interest becomes an annual charge, but it retains its character as realty.

2. The Married Woman's Act of 1848 divested no marital right of the husband which had been exercised before its passage, and was then in full enjoyment.

3. Hence, where a second husband of a widow entitled to dower in lands of her first husband, bought one tract of land in 1842, her interest in the dower charged thereon, became vested in him for life as her husband; and could not, after his death, be recovered by her from his estate.

4. Where the owner of another portion of the land so charged, before and after 1848, paid the yearly interest to the husband in the presence and with the assent of the wife until 1858, when she requested payment to herself, and thenceforward received it: it was *held*, that the husband's use of the money, with the assent and for the benefit of the wife, was to be inferred

under the circumstances of the case: and that she could not recover any part of the money thus received.

5. The owner of the land charged was held a competent witness to prove the facts attending the payment of the annual interest by him.

APPEAL from the Orphans' Court of *Lancaster county*.

This was an appeal, by Martha Mann, from the decree of the court below upon the report of the auditor on the account of Bernard Mann and Martha Mann, administrators of Jacob S. Mann, deceased.

In 1841 the real estate of Christian Stoner, deceased, was by petition in the Orphans' Court divided and appraised into two purparts, designated A. and B. These purparts were accepted September 20th 1841, at which time the usual decree was made in favour of the widow, the annual interest to commence on the 1st of April 1842. Purpart A. was charged with the sum of $866.67, the interest of which was payable annually to Mrs. Stoner, widow of the deceased, and the principal at her death to the heirs of the said Christian Stoner, deceased. In 1837 Mrs. Stoner intermarried with Jacob S. Mann, and in November 1843 Jacob S. Mann purchased the real estate at sheriff's sale, which he occupied until his death. Purpart B., purchased by Martin Fry, was charged with the sum of $366.67, the interest of which was payable annually, as in the other case, to the said Mrs. Stoner, now Mrs. Mann.

Jacob S. Mann died November 19th 1863, leaving an estate which was valued at $31,725.83. He never paid any interest to his wife, nor was any paid since his decease. Martin Fry paid the interest from 1843 to 1858 to Jacob S. Mann, deceased, who gave receipts for the same; after that time he paid it to her. When he paid the interest to Mr. Mann, Mrs. Mann was present but said nothing against it.

The account of the administrators of Jacob S. Mann was referred to an auditor, before whom Mrs. Mann presented the following claims, viz.:—

One for $36 for services rendered in managing tavern for the benefit of the estate from November 19th 1863 to February 19th 1864, which was not allowed by the auditor.

Two other claims for interest on dower against her husband's estate, viz.: Interest of dower $866.67 charged on tavern property, late of Christian Stoner, deceased, former husband of Mrs. Mann, and bought by Jacob S. Mann, deceased, in 1842; from that date to 1864, $52 annually, twenty-two years, $1144, and interest on each sum as the same became due. Also interest on dower, viz., $366.67 charged on property now owned by Martin Fry, and paid to Jacob S. Mann, $22 annually for sixteen years —interest on each sum as the same became due. These claims were also rejected.

Before the auditor, Martin Fry was called by the appellee to

prove that when he paid the interest to Mr. Mann, Mrs. Mann was present but made no objection to it.

The witness was objected to as incompetent by the appellant, but the objection was overruled and the witness admitted to testify.

Exceptions were filed to this report, but the court (LONG, P. J.) dismissed the exceptions and confirmed the report.

The errors assigned were as follows:—

1. The court erred in confirming the auditor's report.

2. In not allowing the claim of Mrs. Mann for the annual interest on the sum of $866.67 charged on the real estate of Christian Stoner, the former husband of Mrs. Mann, deceased, and purchased by her late husband, Jacob S. Mann, now deceased, November 25th 1843; said period running from said November 25th 1843 to April 1st 1864, when the present owner, Mrs. Brenneman, became the purchaser, with interest on each amount as it annually accrued.

3. In not allowing interest on the said sum of $866.67 from April 11th 1848, the date of the Married Woman's Act, to April 1st 1864.

4. In not allowing interest on the said sum of $866.67 from November 19th 1863, the date of Jacob S. Mann's death, to April 1st 1864.

5. In not rejecting the testimony of Martin Fry.

6. In saying that the widow's attorney called said Martin Fry, the witness, whereas the notes of the auditor show that he was called by Mr. Wilson, attorney for the appellees.

7. In not allowing the claim of said Mrs. Mann for the annual interest on the sum of $366.67 charged on the property purchased by Martin Fry, and paid by him to Jacob S. Mann, deceased, from 1843 to 1858, with interest on each annual payment.

*A. Herr Smith,* for appellant, argued: that 1. Prior to the Act of 1848, the husband had a mere naked power to reduce his wife's choses in action into possession. If he failed to use it, the wife's choses survived to her: Johnston *v.* Johnston, 7 Casey 453; Mellinger's Administrator *v.* Bausman's Trustee, 9 Wright 529. Was the purchase in 1843, by Mr. Mann, of the tavern property known as purpart A., and charged with the sum of $866.67, the interest of which was payable annually to Mrs. Mann, *ipso facto* a reduction into possession of her interest? No evidence of his intention exists. No receipt from Mrs. Mann of the payment of the interest is produced. Appellees have nothing to show that she relinquished her right to recover the same as soon as the legal disability of coverture should be removed—coverture being a bar to a suit: 15 S. & R. 84.

2. After the Act of 1848, if the husband collects his wife's

choses in action, the law presumes he has collected the same for her use: Grabill *v.* Moyer *et al.*, 9 Wright 534. In such a case it lies upon one who asserts it to be the property of the husband to prove a transmission of the title either by gift or contract for value, for the law does not transmit it without the act of the parties. If mere possession were a sufficient evidence of a gift, the Act of 1848 would be useless to the wife: 9 Wright 534. The interest therefore of the statutory dower charged on the tavern property, which accrued after the Act of April 11th 1848, vested in the wife as her separate estate. This act is constitutional, as there is no constitutional provision guarding the common-law right of dower; it is no part of the marriage contract: Melizet's Appeal, 5 Harris 454. No vested interest, no right of property of his is interfered with, though the Act of 1848 takes away his dominion over a chose in action, possessed by his wife when the act was passed: Mellinger's Administrators *v.* Bausman's Trustee, 9 Wright 529. Boose's Appeal, 6 Harris 392, referred to by the court below, is not analogous.

3. The error in regard to the competency of Martin Fry, appellant believes would have been corrected, had the court discovered that she did not call him as a witness. By a reference to the auditor's notes, this court will perceive that Mr. Wilson, attorney for Mr. Mann, called the witness, and that special objection was made on the ground of liability over, &c. In Kuester *v.* Keck, 8 W. & S. 16, it is held that a terre-tenant is not competent. This property was bought by Martin Fry, subject to this statutory dower, amounting to $366.67, and with this lien resting upon it, he was clearly in no better position than that of terre-tenant.

4. The payments made by Martin Fry to Jacob S. Mann, deceased, prior to the Act of 1848, may be treated as a reduction into possession. But those made after the act, from 1848 to 1858, amounting to the sum of $220, must, under the decisions in 7 Casey 450 and 9 Wright 534, be treated as payments made to the husband for the use of his wife. The receipts are given to Martin Fry by Jacob S. Mann, for the sum of $22, being the interest on $366.67, charged on the premises of Martin Fry as a lien, the interest of which is to be paid yearly to the wife of Jacob S. Mann, late widow of Christian Stoner, deceased. This receipt shows that Mr. Mann knew that the interest was due his wife. Her presence, however, it is said estops her from claiming the said interest, and, it is contended, is evidence of a reduction into the husband's possession. Quite the reverse. Her silence is evidence either that she was ignorant of her rights, or that she supposed her husband was receiving her money for her use. Neither the receipts nor her presence and silence indicate that she intended this money as a gift. It is not pretended that she made a gift of it to him. It was her money, and the presumption is

[Martha Mann's Appeal.]

that he received it for her: 9 Wright 528, 534; 7 Casey 450. After the year 1858, the interest was paid by Martin Fry to Mrs. Mann. Mr. Mann made no objection, so far as known, to this disposition of her money, and this acquiescence would indicate that his collection of it from 1848 to 1858 was intended for her use and benefit. If the position of the appellees be correct, that this interest, although accruing annually, was vested in Mr. Mann, then his administrators can compel Martin Fry to pay the same again to them in spite of the Act of 1848 and the receipts of Mrs. Mann. This cannot be law.

5. The appellant also claims interest on the annual interest on the different sums as they accrued. See 9 Wright 529, 534.

6. The Statute of Limitations does not bar the widow from a recovery of her claim: 15 S. & R. 84; 3 Wh. 48; Kutz's Appeal, 4 Wright 90; Act of Limitations; Proviso in favour of *feme coverts*, Purd. Dig. 656.

*William R. Wilson*, for the estate of Jacob S. Mann, appellee.— Appellant's counsel assumes, that the statutory interests of his client, as the widow of her first husband, Christian Stoner, were choses in action. And then assumes again, that they had not been properly reduced into possession, or so converted by her second husband, during his lifetime, as destroyed her rights to them now. Neither of these positions is correct. In Schall's Appeal, 4 Wright 170, such interest is expressly defined as an interest in the land. So, also, upon a resume of all the authori- by Justice Woodward, in Ziegler's Appeal, 11 Casey 173. In other words, such thirds or dowers or rent-charge, however named, are real estate: Miller v. Leidig, 3 S. & R. 458. Suppose appellant in 1837, when she married decedent, or in 1841, had been the owner of a farm, can any one doubt that her husband, Jacob S. Mann, was entitled to the rents, issues, and profits thereof, as the law then stood? By it he acquired a vested right in his wife's real estate, which could not, and was not divested by the Married Woman's Act of 1848: Bachman v. Chrisman, 11 Harris 162; Burson's Appeal, 10 Id. 164; Shehman v. Huber, 9 Id. 260. These cases are recognised in the very case on which appellant relies: Mellinger's Administrators v. Bausman's Trustee, 9 Wright 522, 528. Again, Boose's Appeal, 6 Harris 392, in effect controls that branch of appellant's claim growing out of the non-payment of the interest on thirds, charged on tavern property against her. The material facts being entirely analogous to the case in hand.

There is another view of this case, equally decisive against appellant. The question presented by this record is not, as in Mellinger's Administrators v. Bausman's Trustee, whether certain moneys, the right to which accrued to the wife prior to the Act of

1848, but the whole of which was received by her husband after the passage of that act, constituted a sufficient consideration for an express written obligation on his part to pay her the amount so received.  But is a husband's estate liable to account for moneys, the right to which vested before, and which were retained and received by him before and after the Act of 1848, in her presence, and without any obligation or demand on her part, and which went into their joint living, in the absence of any promise on his part to pay the same to the wife ?  Even in this view, McGlinsey's Appeal, 14 S. & R. 64, Dalbrai *v.* Dalbrai, 16 Vez. 125, Powell *v.* Hawkey, 2·P. W. 82, Caton *v.* Rideout, 1 M. & G. 529, rule the case against appellant, notwithstanding the Act of 1848.

If the foregoing positions are sound, the questions of the wife's survivorship, reduction of possession, and what amounts to a conversion on the part of the husband, and presumptions in favour of the wife, hardly arise.  But we think it may be easily shown by Gray's Estate, 1 Barr 327, Hind's Estate, 5 Whart. 138—recognised in Johnston *v.* Johnston, 7 Casey 453—and in 9 Wright 529, that Jacob S. Mann did in fact reduce all this money to his possession, and that with the consent of his wife, both before and after 1848, which must destroy her claim.  The fact that Mr. Mann enjoyed this tavern property, before and after the Act of 1848, without accounting, or ever being called upon to account, for the interest on the thirds charged thereon for his wife, and the fact that he received the interest from Mr. Fry always in her presence, without her objection or demands, destroys any presumption that he held and received the·same for the use of his wife, and this is strengthened instead of weakened by the fact that after 1858 she demanded and received this money herself.  Gochenauer's Estate,¨11 Harris 460, decides that in no event is she entitled to interest.

The exception to Mr. Fry's testimony may be dismissed with the single remark, that as the record can in no view be evidence either for him or against him in any case growing out of any mispayment of interest, and if so, his interest would be balanced, there is nothing to disqualify him from being called by either party.

The opinion of the court was delivered, June 29th 1865, by

THOMPSON, J.—It is conclusively settled in this state that a widow's dower interest in the lands of her deceased husband is not changed into personalty by proceedings in partition by which it is valued, and the interest becomes an annual charge.  It retains its character as realty notwithstanding.  This may be considered elementary law now with us.

When, therefore, Mann, the second husband of the appellant, acquired by·purchase at a public sale a portion of the real estate

[Martha Mann's Appeal.]

of the first husband, charged with the widow's interest, that interest became vested in him for life, as the husband of the widow; and as the authorities conclusively show, was not divested by the supervening principles of the Act of 1848: Burson's Appeal, 10 Harris 164; Stehman v. Huber, 9 Id. 260; Boose's Appeal, 6 Id. 392; Bachman v. Chrisman, 11 Id. 162. These cases are all referred to without comment in the recent case of Mellinger v. Bausman, 9 Wright 522. It is settled, therefore, that the Act of 1848 divested no marital right exercised before its passage and in full enjoyment at the.time. The auditor and court below rightly disallowed the claim of the widow of the first husband against the estate of the second for the annual interest charged by partition on the tavern property which he had purchased in 1842, and occupied until his death in November 1863. His estate was not debtor for that.

As to the interest paid by Fry, the owner of another portion of the first husband's estate, we think it was not a debt against the estate of Jacob S. Mann. The auditor finds that so far as the money was received by Mann, it was so received by him in the presence of and with the assent of his wife. Prior to 1848 her assent was of no consequence if he received it; it is between 1848 and 1858 for which she now claims, and it was during this period that it was received without objection by her. Ordinarily such a receipt would be construed to be for her use, and as her agent; this Johnston v. Johnston, 7 Casey 450, and Graybill v. Moyer, 9 Wright 530, prove; and we do not mean in the least to modify the principle; but we think the testimony in this case would fully have authorized the auditor to have inferred the husband's use of the money by the assent of the wife. "Every time," says Fry, "I paid the money, she was present, and made no objection." When, at length, she directed payment to be made to herself, and was asked why she did not sooner make that request, she said "she thought that what belonged to the wife belonged to the husband." From that time on, which was in 1858, until her husband's death, the interest was yearly paid to her, without any objection by the husband, so far as the testimony discloses. It seems to us, from all this, that no other inference could properly be drawn, but that the money was used in a way agreeable to the wishes and interest of the wife 'and with her assent. This is strongly inferrable, certainly from the fact of her withdrawing her assent after its receipt for a number of years by the husband, accompanied by words showing that she had assented to its use by him during that time. The cases referred to, last above, show that she might give her money to her husband or assent to his use of it for purposes in which she was a common beneficiary. Upon the whole, we think this portion of the claim of the widow was rightly decided against her.

We have not been referred to any principle upon which Fry could be justly held incompetent as a witness in such a proceeding as this. He was not directly involved as gainer or loser by the finding of the auditor, and that is one test of incompetency. Nor do we see how or in what way the auditor's report and decree of confirmation upon it, could ever be evidence for or against him, even supposing the contingency of his ever being troubled about mispayment, if such could be alleged, should happen. On no ground that we can see was he incompetent.

We are of opinion, therefore, that there is nothing requiring correction in the record, and the decree is affirmed at the costs of the appellant.