# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

D. C. Kunselman and Lavina Kunselman, his wife, for the use of said Lavina, Appellants, *v.* W. Nelson Stine.

[Marked to be reported.]

*Dower—Partition—Decedents' estates—Husband and wife.*

The dower interest which a widow has in the real estate of her husband is an estate for life, and such interest is not changed by the fact that in partition proceedings it is charged upon all of the lands of the husband passing to a purchaser. Such an estate can only be sold by a writ of venditioni exponas, in the manner provided by the act of January 24, 1849.

*Execution against life estate—Venditioni exponas—Acts of October 13, 1840, and January 24, 1849.*

Under the Act of January 24, 1849, P. L. 677, the right to sell a life estate in the same manner as estates of inheritance are sold, upon a writ of venditioni exponas, is subject to two conditions; first, the right of the defendant to an appraisement of its annual value by an inquest and to elect to retain possession at the rental fixed; second, the consent or order of the proper court made after ten days' notice to the defendant that such writ has been asked for.

Where a widow's interest charged upon the real estate of her husband is sold under a judgment against her, without an order of court allowing the writ of venditioni exponas, and without notice to the widow, the sale is void, and confers no title upon the purchaser.

Argued May 24, 1897. Appeal, No. 412, Jan. T., 1896, by plaintiff, from judgment of C. P. Northumberland Co., Sept. T., 1894, No. 365, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Reversed.

Case stated as follows :

And now, May 9, 1895, it is hereby agreed by and between the parties to the above suit, that the following case be stated for the opinion of the court, in the nature of a special verdict.

1. Jonas L. Stine, late of Upper Mahantongo township, Schuylkill county, died intestate, on or about the first day of September, A. D. 1869, leaving to survive him Lavina Stine, widow, now wife of D. C. Kunselman, and use plaintiff, W. N. Stine, defendant, and other children.

2. Dr. A. B. Karterman and Aaron Barrel were appointed administrators of the estate.

3. On the 30th day of November, 1869, the administrators filed an inventory of the personal estate, the total amount of which was $8,024.69, not including the $300 set apart to the widow under the exemption law. After the payment of all the debts, the widow received from the administrators the sum of $1,570.57.

4. On the 9th day of January, 1871, the widow and all the heirs petitioned the orphans' court of Schuylkill county for the appointment of three commissioners to divide the real estate of the said Jonas L. Stine, deceased, and if no division could be made without prejudice, etc., appraise the same. The commissioners appointed filed their report March 13, 1871, from which it appears that a certain tract of land situated in Upper Mahantongo township, Schuylkill county, containing one hundred and twenty-one acres, could not be divided without injury, etc., and that the same was appraised at and for the sum of $6,976.86. This appraisement was confirmed by the court on the 13th day of March, 1871.

5. And now to wit: April 17, 1871, at an orphans' court of Schuylkill county, the widow and heirs of said Jonas L. Stine, deceased, having, by writing attached to said proceedings and filed, declined to accept the real estate at the appraised valuation thereof, and desired the court to grant an order of sale thereof, the said court do thereupon, on motion of George deB. Keim, Esq., attorney for the administrators, order and direct Aaron Barrel, one of the administrators of the estate of the said deceased, and A. B. Karterman, to expose the real estate in the petition described at public sale on Saturday, the 27th day of May, A. D. 1871, at one o'clock in the afternoon, on the

premises, and sell the same to the highest and best bidder (having first entered into bond in the sum of $14,000, with Joseph K. Maurer and Isaac Schneider as security, who are approved by the court, conditioned for the faithful application of the proceeds of sale), one third of the purchase money to remain a lien, the interest of which to be paid annually to the widow of the deceased during her life, and at her death the principal to be paid to the heirs and legal representatives of said deceased, and that the said persons appointed to make sale make return of their proceedings herein to the next stated orphans' court after the said time fixed for the said sale.

6. The administrators filed a bond which was approved by the court, and an order of sale issued in accordance with the decree of said court.

7. And now, September 21, 1871, at an orphans' court of Schuylkill county, in the matter of the real estate of Jonas L. Stine, deceased, on motion of George deB. Keim, attorney for the administrators, the said court do continue the order of sale made the 17th day of April, 1871, and direct Aaron Barrel, one of the administrators, and A. B. Karterman to expose the real estate in the petition described to public sale on Saturday, the 7th day of October, A. D. 1871, at ten o'clock in the forenoon, on the premises, and sell the same to the highest and best bidder, one third of the purchase money to remain a lien, the interest of which shall be paid annually to the widow of the deceased during her life, and at her death the principal to be paid to the heirs and legal representatives of said deceased, and that said persons appointed to make sale make return of their proceedings herein to the next stated orphans' court after the time fixed for the sale.

REPORT OF SALE.

8. To the honorable the judges of the orphans' court:

The petition of Aaron Barrel, one of the administrators of Jonas L. Stine, late of said county, deceased, and A. B. Karterman, respectfully represent that under and by virtue of an alias order or decree of sale, bearing date the 4th day of September, A. D. 1871, having first given due and timely notice by handbills and advertisements, during at least twenty days, they did on the 4th day of November, 1871, expose the real estate, in the

original and alias orders or decrees more fully described, to public sale, at auction upon the following terms, to wit: One third of the purchase money, being the share of the widow, to remain in the hands of the purchaser during the natural life of the said widow, and the interest thereof to be annually and regularly paid to her by the purchaser, his heirs and assigns, and at her decease the said widow's share of the purchase money to be paid to the persons legally entitled thereto, agreeably to the act of assembly in such case made and provided; twenty per cent of the balance of said purchase money to be paid in cash upon the property being struck down; and an agreement to be signed by the purchaser for the payment of the balance on or before the first day of April, A. D. 1872, upon having a good title made to him. Whereupon W. N. Stine became the purchaser of the premises referred to in the said order of sale, described as follows: All that certain messuage and tract of land situate in the township of Upper Mahantongo, Schuylkill county, bounded by lands of Gabriel Herb, Peter Schlegel, Peter Starr, formerly Solomon Erdman, Adam S. Herb, Henry Herb and land of Daniel Rumberger, formerly of Eli Erdman, containing one hundred and twenty-one acres, more or less, with the appurtenances, being the same premises which Daniel S. Herb and wife, by indenture dated May 22, 1866, and duly recorded, granted to said Jonas L. Stine in fee, for the price or sum of $6,160, he being the best bidder and that the highest price bidden for the same. Whereupon your petitioners pray that your honors will further order and decree that the aforesaid sale be confirmed and stand valid and stable to the said respective purchaser, his heirs and assigns forever; that the share of Lavina Stine, widow of Jonas L. Stine, deceased, in the above described property, shall remain in the hands of the said purchaser thereof during the natural life of the said Lavina Stine, widow as aforesaid, and that the interest thereof, to wit: at six per cent per annum, shall be annually and regularly paid to her, the said Lavina Stine, during her natural life, by the said purchaser, his heirs and assigns, respectively, holding said premises, which the widow shall accept in full satisfaction of her dower in the said premises, and at her decease, the aforesaid share of the said purchase money, being one third thereof, shall be paid to the persons legally entitled thereto, agreeably to the act of assembly in such

case made and provided, and upon the payment of the balance
of the purchase money, being eighty per cent thereof, by the
said purchaser on or before the first day of April, A. D. 1872,
that then the said petitioners shall and do execute to the said
purchaser deeds of conveyance of the aforesaid premises pur-
chased by him.

### CONFIRMATION OF SALE NISI.

And now, February 1, 1872, at an orphans' court of Schuyl-
kill county, the foregoing return of the administrators being pre-
sented and heard, the court confirm the same nisi, and direct it
to be filed.

### CONFIRMATION OF SALE ABSOLUTELY AND ORDER OF COURT.

9. And now, March 25, 1872, upon motion of George R.
Kaercher, the court confirm absolutely the return of sale made
by Aaron Barrel and A. B. Karterman to order of said court to
make sale of said real estate of the said Jonas L. Stine, deceased,
and the court direct that one third of the purchase money, to wit:
one third of $6,160, being $2,053.33, being the share of Lavina
Stine, widow of the said Jonas L. Stine, deceased, shall remain
in the hands of the purchaser, W. N. Stine, during the natural
life of the said Lavina Stine, widow as aforesaid, and that the
interest thereof, to wit: at six per cent per annum, shall be semi-
annually and regularly paid to the said Lavina Stine upon the
first Monday of April and October of each and every year dur-
ing her natural life, by the said W. N. Stine, his heirs and as-
signs, respectively, holding said premises; to be recovered by
distress, or otherwise, as rents are recoverable in this common-
wealth, and at her decease the said sum of $2,053.33 shall be
paid by the said W. N. Stine, his heirs and assigns, respectively
holding said premises, to the persons legally entitled thereto;
and the court further order and direct that upon the payment
of the balance of purchase money, viz: $4,106.66, by the pur-
chaser, then the said Aaron Barrel and A. B. Karterman exe-
cute a deed to the purchaser for the said premises, and that the
sale thereof remain firm and stable to him, the said W. N. Stine,
his heirs and assigns forever.

10. Lavina Stine, the widow of Jonas L. Stine, became in-
debted to A. H. Seipt, for a bill of liquors sold her March 6,

1871, for $434. (*a*) On the 27th day of November, 1871, a summons was issued by A. H. Seipt on the above bill against Lavina Stine, now Kunselman, and use plaintiff, to No. 563, December term, 1871. (*b*) On the 8th of January, 1872, judgment was entered for $451.36. On the same day a fi. fa. was issued to No. 106, March term, 1872, which writ was stayed by plaintiff's attorney without a levy. (*c*) On the 19th of March, 1872, an al. fi. fa. was issued to No. 59, June term, 1872. The following levy is indorsed on said writ by the sheriff: (*d*) "Levied on all the right, title and interest of Lavina Stine, of, in and to all that certain farm or tract of land situate in Upper Mahantongo township, Schuylkill county, adjoining lands of Gabriel Herb, Peter Starr, Peter Schlegel and others, containing one hundred and twenty acres, more or less, with the appurtenances, consisting of a two-story frame tavern and dwelling house, a frame barn, a frame wagon shed, etc., as the property of Lavina Stine. Inquisition attached and the land levied was condemned." (*e*) On the 5th of August, 1872, an attachment execution was issued on the above judgment to No. 570, September term, 1872. Dr. A. B. Karterman, Aaron Barrel, administrators of Jonas L. Stine, and W. N. Stine were summoned as garnishees. On the 13th of August, 1872, the attachment was served on Dr. Karterman and W. N. Stine. (No service on Barrel.) On the 30th day of October, 1874, a venditioni exponas was issued to No. 236, December term, 1874, for the sale of the real estate levied and condemned as above stated. This writ was stayed by order of court, in the following opinion on rule to stay writ:

The facts in this case were not disputed on the argument. Under proceedings in partition in the orphans' court, the real estate of the deceased husband of the defendant was appraised and accepted by one of the heirs, who entered into recognizance to pay the widow (the above-named defendant) annually during her life, the interest on the one third of the appraised valuation. Subsequently the defendant contracted the debt for which the judgment in this case was obtained against her. The application before us is founded on the acts of assembly of 13th of October, 1840, and 24th of January, 1849, relating to sales under execution of life estates. See Purd. Dig. pp. 651, 652. In support of it the cases of Kintz v. Long, 30 Pa. 501, and Snyder v. Christ, 39 Pa. 499, have been cited. If the position

taken by the defendant's counsel is correct, it follows that a sequestrator may be appointed, who may have the full and undisturbed possession of the premises delivered to him, and thus turn out the heir to whom the orphans' court has awarded the lands, and who is now admitted to be in possession. The partition and acceptance of the real estate prior to the time the widow contracted the debt to the plaintiff worked a conversion of the premises awarded to the heir. In the case of the Lancaster County Bank v. Stauffer, 10 Pa. 398, it is decided that the sixth section of the act of 1840, before cited, authorizes the appointment of a sequestrator only " where an unconverted life estate is taken in execution, in order to make the debt out of the rents and profits, without a sale, but neither the letter nor the spirit of the enactment extends to lands already turned into money." See Scott on Intestate Laws, 411. The rule must be discharged.

11. On February 9, 1875, an alias venditioni exponas was issued to No. 264, March term, 1875. To this writ the sheriff made return that he had sold the premises to A. H. Scipt on March 6, 1875, for $25.00; and that the sheriff duly executed, acknowledged, and delivered a deed to the said A. H. Scipt, for the premises thus sold, and that the arrears thus claimed in this suit accrued after the levy and sale and delivery of the deed to the purchaser.

REASONS AGAINST CONFIRMATION OF SALE.

1. The only interest of the defendant in the real estate described in the advertisement of the alleged sale is a life estate, as the widow of Jonas L. Stine, deceased.

2. The proceedings by which the alleged sale has been made are null and void in this, that the law prescribes that no sale of any life estate shall take place without notice being first given to the defendant and a special order of the court be made directing such sale, and none of said requirements was complied with in this cause.

3. The records of the orphans' court of this county clearly show the partition proceedings upon the real estate of said Jonas L. Stine, deceased, and that the defendant's interest therein is only a dower, interest to be paid semiannually to defendant, secured upon the said land as directed by the laws in such

proceedings, of all of which the said plaintiff as well as the sheriff had notice.

## OPINION OF COURT.

Three objections have been made to the confirmation of this deed, but they raise only a single question of law. It is claimed that the interest of defendant in the real estate sold was but a life estate, and that under the act of January 24, 1849, 1 Purd. Dig. 652, 88, 89, 90, before such an estate could be sold, it was necessary that the writ should issue under the direction of the court, and that the defendant should have ten days' notice of the application for such writ. It is admitted that no application for the writ was made to the court, and no notice given. Had the defendant such a life interest in the real estate as made this necessary? This is the only question. Her interest is a widow's interest in the estate of her deceased husband. Under proceedings in partition in the orphans' court, the property was sold and the one third of the purchase money remained charged upon the land, the interest upon which was decreed to be paid to her annually during her life. This estate of hers is undoubtedly a life interest. Is it such an estate in lands and tenements as was intended to be embraced within the acts of October 13, 1840, and January 24, 1849?

Prior to the act of June, 1836, a life interest in lands could be sold on a vend. ex. but there was no necessity for inquisition and condemnation. By that act the law was changed so far as regarded life estates in improved lands or tenements, yielding rents, issues and profits. They could no longer be sold; but after an inquisition which was to ascertain the clear yearly profits of the real estate, making allowance for taxes, necessary repairs and all reprises, the plaintiff could have the estate extended and delivered to him by a writ of liberari facias, according to the valuation fixed by the inquest, or he might have a sequestrator appointed who was to receive the rents, issues and profits. The sequestrator had authority to rent or sell such lands or tenements for a length of time sufficiently to satisfy all the liens, expenses, repairs, etc., but not for a longer period than the life interest of the defendant. This took away the power to sell on a vend. ex. By the act of October 13, 1840, a sequestrator might be appointed on the application of any lien creditor. The pro-

visions of the act of June, 1836, were repealed by that act, but it was decided that the right to sell under a vend. ex. was not restored: Eyrick & Deppen v. Hetrick, 13 Pa. 488; Dennison's Appeal, 1 Pa. 201; Parget v. Stambaugh, 2 Pa. 485. The act of 1849 declared that life estates might be sold on a vend. ex. in the same manner as estates of inheritance, unless a sequestrator was appointed as before stated, or the defendant should elect to pay the plaintiff, in case of condemnation, the annual valuation in half yearly payments. It further provided that the vend. ex. should only issue under the direction of the court and after ten days' notice of the intended application for the writ. The fifth section of the act also provided that the sheriff, whenever required by the sequestrator, shall put him and keep him, his vendees and lessees, in full and undisturbed possession of the land and tenements with the appurtenances levied on. It is also made unlawful and criminal for the defendant or any other person to disturb the possession of the sequestrator.

But is a widow's dower such a life interest in lands as is embraced within the terms of this act? Could a sequestrator take possession of her lands and tenements, sell them, or lease them, or could the sheriff put the sequestrator in possession as is required by the act? Clearly not, unless her share has been laid out in metes and bounds, and she has a life estate assigned to her as land, or unless she, by virtue of her right, is entitled to the actual possession of lands or tenements. In such a case possession might be delivered to the sequestrator, and he might either sell or lease. Such an estate would, I think, be embraced within the provisions of the act of January 24, 1849. But can the act be made to apply when the land has been sold under proceedings in partition? It is true that these proceedings, and the sale under them, did not change her interest from realty into personalty. It would still be bound by the lien of a judgment, and could only be sold on a vend. ex. But the manner of holding her interest has, I think, been changed from what it would have been if her interest had been set off by metes and bounds in the land itself. In the latter case she would have had the possession, and it might be delivered over to a sequestrator, in the former case she would not. By the proceedings in partition, her interest has become not a corporeal but an incorporeal hereditament; not an interest in the land itself as land,

but an interest issuing out of it — a life interest only in the annual sum which is to be paid to her, and which is charged upon the land and flows from it. This distinction in the manner in which she holds her estate in the land is recognized in Gourley v. Kinley, 66 Pa. 270: "Where the widow's share is laid off by metes and bounds, she has a life estate in the portion assigned her as land, which carries with it as a necessary incident the right to receive the rents and profits; but when the estate is accepted at the appraisement or sold, she has a life estate, not in any specific portion of the land, but in an equivalent share of the rents and profits of the whole estate, measured by the interest on her share of its value as ascertained by appraisement or sale." In the former case the act of 1849 would apply. Possession could be delivered and enforced, and the sequestrator could perform the duties enjoined in the act. But in the latter no possession could be given of the lands and tenements subject to the dower, and the sequestrator would be a supernumerary. As bearing upon the general principle see also The Lancaster County Bank v. Stauffer, 10 Pa. 398. From what we have said it follows that no notice of an application for a writ of vend. ex., and no special application to the court for the writ were necessary. The exceptions must therefore be overruled and the sale confirmed.

Nor will the defendant be without remedy if we confirm this sale. The sale will pass no title if her interest is such an estate in land as is embraced within the terms of the acts regulating the sales of life estates, and this question may be tried in a subsequent proceeding between herself and the purchaser: Dennison's Appeal, 1 Pa. 201; Snavely v. Wagner, 3 Pa. 275; Gordon et al. v. Inghram, 32 Pa. 214.

12. May 10, 1875, interrogatories were filed in pursuance of said attachment for W. N. Stine to answer. May 22, 1875, interrogatories served on W. N. Stine. (*a*) June 5, 1875, answers to interrogatories filed by W. N. Stine admitting to owe to Lavina Stine up to the 1st day of April, 1875, the sum of $429. (*b*) On June 21, 1875, a rule was entered on W. N. Stine to show cause why judgment should not be entered against him as per answer filed. (*c*) July 26, 1875, judgment was entered against W. N. Stine for $429, on his answer to interrogatories, being to April 1, 1875.

13. It is further agreed, in agreeing to the facts in this case stated, that the defendant does not waive the right to question the court's jurisdiction to proceed in the manner and form in which this suit was instituted; but the defendant reserves the right to raise the question of jurisdiction.

14. It is also agreed that a suit was brought in the court of common pleas of Schuylkill county, to No. 365, May term, 1886, in which the parties to this case stated were the plaintiffs and defendant, respectively, to recover for the same cause of action, and that, on the 27th day of November, 1893, a nonsuit was entered for default of the plaintiffs' failure to file a statement or declaration, and the costs were paid by the plaintiffs on said suit, on the 14th day of February, 1895.

15. It is further agreed by and between the parties to this case that, if the court be of opinion that the plaintiffs are entitled to recover for the dower interest that became due since April 1, 1875, then judgment be entered accordingly in favor of the plaintiffs for $3,700, with interest from August 6, 1894; but if the court be of opinion that the statutes of limitation apply, and the plaintiffs are entitled to recover, then judgment accordingly for the plaintiffs for the sum of $874.64, with interest from August 6, 1894; but if the court is of the opinion that the plaintiffs are not entitled to recover, then judgment to be entered for the defendant.

The costs to follow the judgment, and both parties reserving the right to remove the case to the supreme court for review.

*Error assigned* was in entering judgment for defendant on case stated.

*S. B. Boyer*, for appellant.—The interest of a widow in her husband's real estate is a statutory substitute for the common-law dower: Bachman v. Chrisman, 23 Pa. 162; Schall's App., 40 Pa. 170; Gourley v. Kinley, 66 Pa. 270; Kurtz's App., 26 Pa. 465; Vensel's App., 77 Pa. 71.

The widow actually petitioned with the other heirs for the order of sale, which shows that she gave her consent to convert the land into money: Diefenderfer v. Eshleman, 113 Pa. 305.

Nothing passed by the sale made on the Seipt judgment: Small's App., 24 Pa. 398; Gibbs v. Neely, 7 Watts, 305; Cath-

cart's App., 13 Pa. 416 ; Morrison v. Hartman, 14 Pa. 55 ; Baldwin's Est., 4 Pa. 248; Kase v. Kase, 34 Pa. 128; Franklin Fire Ins. Co. v. West, 8 W. & S. 350; Fulweiler v. Hughes, 17 Pa. 440.

Under the act of January 24, 1849, Purd. Dig. 1894, p. 850, the writ to sell could not be issued without notice to the life tenant and by leave of court: Com. v. Allen, 30 Pa. 49 ; Pennsylvania Annuity Co. v. Vansyckel, 2 Pittsburg Reps. 535 ; Murphy v. Borland, 92 Pa. 86.

*N. Heblich* and *W. A. Marr*, with them *C. B. Witmer*, for appellee.—It is contended by appellee, that the widow's interest in the real estate of her husband, of which he died seized, is fixed by statute, and is real estate, and cannot be changed by any proceedings in the orphans' court, and in support of this position the following authorities are cited : Shaupe v. Shaupe, 12 S. & R. 12; Miller v. Leidig, 3 W. & S. 456 ; Thomas v. Simpson, 3 Pa. 60 ; Zeigler's App., 35 Pa. 173 ; Schall's App., 40 Pa. 170 ; Mann's App., 50 Pa. 375 ; Gourley v. Kinley, 66 Pa. 270 ; Diefenderfer v. Eshleman, 113 Pa. 308 ; Hollenberger v. Yaukey, 145 Pa. 179.

The doctrine laid down in Kurtz's Appeal, has been overruled in Zeigler's Appeal, 35 Pa. 189, in Schall's Appeal, 40 Pa. 170, and again in Helfrich v. Weaver, 61 Pa. 385, and in no case has there been an attempt to establish the doctrine that the widow's estate in her husband's lands of which he died seized, is a charge on the land in the nature of a lien, since Kurtz's App., 26 Pa. 465 ; Vensel's App., 77 Pa. 71.   See Miller v. Leidig, 3 W. & S. 456.

OPINION BY MR. JUSTICE WILLIAMS, October 11, 1897 :

The important question in this case is not free from difficulty. It involves the nature of the interest of the widow of an intestate in the lands of the deceased husband after a sale of the lands in partition.   The general rules applicable to an estate in dower are well settled.   Dower consummate is a life estate. After it has been assigned by metes and bounds the title and the possession are in the widow and she has the same absolute ownership and control of her estate as though her title had accrued by deed or will.   She may alien, incumber or otherwise dispose of it,

and it may be seized and sold for her debts. Is the nature of her estate or interest changed by proceedings in partition under our statutes ? In this case the decedent was the owner of a valuable farm. Soon after his death proceedings were instituted by his heirs for making partition. The appraisers appointed by the court made return that the farm could not be divided without injury and fixed its value as a whole. The heirs thereupon declined to take it at the valuation and requested that an order be made for its sale. The widow joined in this request. The court then made the order of sale usual in such cases, and directed that one third of the price at which the land should be sold should remain in the hands of the purchaser until the death of the widow, and be then paid to the heirs at law of the former owner, and that meantime the interest on said sum at the rate of six per cent should be paid to the widow during her life. After this sale was made a creditor of the widow obtained judgment against her for about $400. Assuming that her interest in the land was a life estate, after, as well as before the sale, in partition, the creditor levied upon it and sold it as he would have levied and sold an estate in fee simple without any application to the court, and without a special writ, and became himself the purchaser for the sum of $25.00. Did this sale vest in the purchaser a title to the interest or estate of the widow ? That must depend upon what her interest or estate was, and whether it was sold in the manner required by law. It would seem to be quite clear under our cases that the interest of the widow was that of a tenant for life. It was unquestionably a life estate before the proceedings in partition were instituted. The object of this partition was not to destroy or divest her estate, but to make division among the heirs at law subject to her dower. A decree making partition by purparts among the heirs would not have prevented her from asking an assignment of her dower by metes and bounds, nor did the decree of sale qualify her estate except as to the manner of its enjoyment. She could not require the purchaser to assign her dower upon the land after the sale, for the decree had assigned her dower by a different method of admeasurement, viz : by valuing her estate, and requiring her to accept six per cent upon such value in lieu of actual possession of the surface. The return of sale was, therefore, in effect, of a sale subject to her estate in dower,

·to be enjoyed by her in the manner provided by the statute and the order of sale, instead of by assignment by metes and bounds on the surface : Martha Mann's Appeal, 50 Pa. 375. It is not ·converted into a lien by proceedings in partition : Zeigler's Appeal, 35 Pa. 173; Schall's Appeal, 40 Pa. 170; but such proceedings are in legal effect an assignment of dower, and her estate after such proceedings continues to be a life estate : Gourley v. Kinley, 66 Pa. 270. Her interest is changed by a sale in partition, not in its quantity or character, but simply in its method of use and enjoyment.

The other question remains to be considered, viz : was the sale made in conformity with the laws of this state ? This must depend upon the construction of the act of October 13, 1840, by which the manner of the seizure and sale of life estates in execution is regulated. Section sixth of that act authorizes the court upon the application of a lien creditor to appoint a sequestrator, with power to take the " rents, issues or profits " of the life estate and apply then upon the liens against it or, if the life tenant is in the actual possession of the land, to enter upon such possession and " rent or sell such lands or tenements for such terms during the life of the persons upon whom such estate shall depend as shall be sufficient to satisfy all the liens against the same, together with all charges for taxes, repairs and expenses," and make application of the same to the payment of the liens under the direction of the court, and according to their priority as liens upon the life estate. The sequestrator is entitled to the possession of the life tenant. If, before the entry of the liens, a valid lease had been made to one who was in actual possession of the land, paying rent therefor, we do not understand that the sequestrator would have any legal right to dispossess, or enter upon such tenant. He could however seize and apply the rents paid by him. He would, as to such prior valid lease, be clothed with the rights and powers of the life tenant and authorized to collect and apply all the " rents, issues or profits " until the purposes of his appointment were fully met. But what if no lien creditor applied for the appointment of a sequestrator? Then the execution creditor might proceed under the provisions of the third section of the act of January 24, 1849 which authorized the sale of " life estates yielding rents, issues or profits," in the same manner as estates of inherit-

ance may be sold upon execution process, viz: upon a writ of venditioni exponas after advertisement. The defendant was however permitted to have an appraisement made by a sheriff's inquest of the yearly value of the land, and to elect to retain possession and pay the rental fixed by the inquest in semi-annual payments to his creditor. A proviso to the fourth section of this act expressly declared that no venditioni exponas should issue for the sale by the sheriff of the life estate, "unless by the direction of the proper court; and on the application of any lien creditor for a writ of venditioni exponas the tenant for life shall have at least ten days' notice of the application for such writ." Thus it will be seen that the right to sell a life estate, in the same manner as estates of inheritance are sold, upon a writ of venditioni exponas, is subject to two conditions; first, the right of the defendant to an appraisement of its annual value by an inquest, and to elect to retain possession at the rental fixed; second, the consent or order of the proper court, made after ten days' notice to the defendant that such writ is asked for. These conditions, like the provision for the appointment of a sequestrator, are really in aid of the tenant for life, whose estate is of such uncertain duration as to make it of little value to ordinary purchasers, and render its sacrifice at a public sale practically certain.

Not only would its sale be ordinarily disastrous to the life tenant, but equally so to the lien creditor, since the proceeds of such sale would ordinarily be much less than could be realized by sequestration or by an appraisement and election to pay the rental by the defendant. But it is not necessary to rest our ruling on general principles alone, since the construction of the act of 1849 seems to have been settled in several cases. In Com. v. Allen, 30 Pa. 49, it was held that a life estate can not be sold upon a fi. fa., but must be sold as provided by the act, upon a venditioni exponas. The further point that no writ of venditioni exponas could issue without the order of the proper court, made after ten days' notice to the defendant, was distinctly ruled as early as 1858, in Kintz v. Long, 30 Pa. 501, and it was also said, a sheriff's sale of a life estate "under a venditioni exponas issued without such notice is void, and confers no title upon the purchaser." The invalidity of such a

sale was again distinctly ruled in Snyder v. Christ, 39 Pa. 499, in which our late Brother STRONG said: "We think therefore the court should have affirmed unqualifiedly the fifth point proposed by the defendants below, which was that if Snyder's interest in the land was a life estate only the sale did not divest the title, unless the venditioni exponas on which it was sold was issued by the order of the court of common pleas on ten days' previous notice of the application for such writ to said Snyder." To the rule thus stated three exceptions are recognized: first, where the life tenant has no possession, but the person in possession claims to hold in hostility to the life tenant; second, when the defendant alleges his interest to be a fee and not a life estate; third, when the creditor has reasonable ground to believe that the debtor is the owner of the fee, and proceeds upon that theory. In the first case the creditor merely buys a right to litigate with the person in possession over the existence of the life tenancy. In the second he takes his debtor at his word and sells the interest he claims to have in the land. In the third he acts upon his own judgment as to the defendant's title and takes the risk of its correctness.

Substantially this was held in Gordon v. Inghram, 32 Pa. 214, and the existence of the exceptions was again recognized in the opinion of this court in Snyder v. Christ, 39 Pa. 499. But, exceptio probat regulam. The rule applies with full force when the existence of the life estate is asserted by the defendant and acknowledged by the person in possession of the land charged with the payment of the ascertained "rents, issues or profits of the life estate to the holder thereof." In the present case it is conceded that the life estate was sold without an order of the court allowing the writ, made under the act of 1849, and without notice to the defendant. The sale so made was, in the language of Kintz v. Long, supra, "void, and confers no title upon the purchaser." With what he acquired under the attachment in execution there seems to be no controversy. He obtained a judgment in that proceeding which has not been complained of, but which has been fully paid. Judgment should therefore be entered upon the case stated in favor of the plaintiff for the amount of her claim, less the amount secured by the attachment execution. The case stated appears to adjust

that amount at $429.   Upon that understanding we adjust the amount due to the widow as the parties seem to have adjusted it, at $3,700, with the interest from August 6, 1894, the day of demand made in this case.

Judgment will be entered°accordingly.