## Gordon *et al. versus* Inghram.

Under the Act 13th October 1840, the sequestration of a life estate is unnecessary, where there is an adverse possession in hostility to it; or where the debtor claims to hold in fee; or where the creditor has reasonable ground to believe that the debtor owns the fee.  In all such cases, the defendant's interest in the land may be sold on execution.

ERROR to the Common Pleas of *Greene county.**

This was an ejectment by Thomas Inghram against John B. Gordon and Harvey Reimer, for a tract of 130 acres of land.

The plaintiff claimed title under his father, Arthur Inghram, who by his will, dated the 13th October 1834, devised the same to the plaintiff for life.

The defendants proved that from the year 1817, or thereabouts, the plaintiff had claimed to be the owner of the premises in question, under a parol gift from his father, in pursuance of which he had entered into possession, and made valuable improvements; and that the land was levied on and sold by the sheriff, under an execution against the plaintiff, at June Term 1842, to William Rhodes; who, on the 27th June 1843, conveyed the same to John B. Gordon, one of the defendants.

The defendants then gave in evidence the record of a former ejectment by Gordon against the plaintiff; wherein Gordon had recovered possession of the premises, and proved that the same had been ever since maintained.

And, in order to show an outstanding title, they gave in evidence the record of a judgment recovered by Jesse Hook against the plaintiff, for $59.17, under which the premises in dispute had been

* This case was decided in October 1854.

[Gordon *et al. v.* Inghram.]

levied on and sold by the sheriff to R. W. Downey for $300, on the 18th March 1846.

On the trial the defendants presented certain points in writing, upon which they requested the court to charge the jury, the 2d and 3d of which were as follows :—

2. That if the land was held adversely to the plaintiff, though his interest was but a life estate, yet, if at the time of the seizure and sale on the judgment of Hook, it was yielding no rents, issues, and profits, that Hook could have had applied to the extinguishment of his judgment, such sale would pass the title.

3. If a defendant, before the sale of his land by the sheriff, claimed an interest or title in the land which would be subject to levy and sale, and was in possession a long time under such title, and got the advantage of a sale of a fee simple interest, it would be inequitable to allow him to set up against the sheriff's vendee a title or interest not subject to levy or sale.

The court below answered these points in the negative, to which the defendants excepted ; and a verdict and judgment having been rendered for the plaintiff, the defendants removed the cause to this court, and here assigned the same for error.

*Downey*, for the plaintiffs in error, cited Dennison's Appeal, 1 *Barr* 201; 1 *Yeates* 427; 2 *Binn.* 80; 2 *Miles* 156; 10 *S. & R.* 146; 3 *Rawle* 496; 2 *Penn. R.* 277; 16 *S. & R.* 198.

*Phelan & Montgomery*, for the defendant in error.

The opinion of the court was delivered by

LEWIS, J.—In 1843, it was held that, under the provisions of the Act of 13th October 1840, a life estate in land could not be sold on execution *after a lien-creditor had applied for and obtained the appointment of a sequestrator.* It was also held, at the same time, that the application for the appointment of a sequestrator might be made " *at any time before the sale :*" Pentland *v.* Kelly, 6 *W. & S.* 483. On the 24th January 1849, the legislature passed an act, declaring it to be the true intent and meaning of the Act of 1840, that the sale of a life estate was good and valid unless some lien-creditor procured the appointment of a sequestrator " *on or before the return day of the first writ of venditioni exponas whenever a sale shall be advertised.*" Of course it is not in the power of the legislator to expound the meaning of the Act of 1840 by a subsequent act, so as to make the latter operate retrospectively upon rights which were vested before its enactment. But it is worthy of remark, that the legislature, as well as the judiciary, have sanctioned the justice and good sense of the principle, that where the parties interested permit a proceeding to progress, which is repugnant to the privilege of sequestration, they shall be

[Gordon *et al. v.* Inghram.]

deemed to have waived the benefit of the latter. It is plainly implied from the action of both, that if no sequestrator be appointed before the sale, the purchaser will take the debtor's title to the life estate. But in several cases subsequent to Pentland *v.* Kelly, it seems to have been determined in general terms, that a sheriff's sale of a life estate, in land, passed no title, although the debtor made no objection to the proceeding, and although no lien-creditor applied for a sequestration. If these cases are to be sustained, the debtor may stand by and witness the sale of his life estate, and the application of the proceeds to the payment of his creditors, and then hold or take the estate from the purchaser whose money discharged it from the encumbrances: Dennison's Appeal, 1 *Barr* 201; Parget *v.* Stambaugh, 2 *Barr* 485; Snavely *v.* Wagner, 3 *Barr* 275; Ingraham *v.* Gordon, not reported. We may regret the existence of these decisions, but our reluctance to disturb what has been decided, leaves them a foothold to which they are not entitled upon any other principle.

In this case, as now presented, two questions arise, which do not seem to have been heretofore considered in this state. 1st. Does the Act of 1840 require a sequestrator of a life estate where there is a possession in hostility to it? 2d. Where the debtor himself disclaims the life estate and claims a fee, or where the creditor has reasonable ground to believe that the debtor owns the fee, does the Act of 1840 require the appointment of a sequestrator?

That act directs the appointment of a sequestrator only " whenever an estate for life in any improved lands or tenements *yielding rents, issues, or profits,*" shall be taken in execution. As the provisions of the act relate exclusively to the *estates of the debtor,* the " rents, issues, and profits" referred to must necessarily mean those which the *debtor* receives, not those which *strangers* receive under titles and possessions in hostility to those of the debtor. The act operates only upon an *actual perception of profits*—not upon a *mere right of action* for them, in tort, dependent upon a recovery in ejectment. At the time of the second sheriff's sale, in 1848, there was an adverse possession under a prior sheriff's sale, made in 1843 ; and that adverse possession had the additional sanction of a verdict and judgment in its favour. This was sufficient to toll the entry of the debtor. He had neither possession nor right of entry. He had nothing but a *right of action.* In general, according to the practice of the English chancery, a *chose in action* is not the subject of sequestration. The sequestrator may take possession only of goods and chattels which are in the *possession* of the defendant, or which can be *come at without suit or action :* 1 *Dan. Ch. Prac.* 637. They may also enter into possession of such parts of the defendant's real estate as are in " *his own occupation,*" or " *in the occupation of his tenants :*" 1 *Dan. Ch. Prac.*

[Gordon *et al. v.* Inghram.]

641. So, where a tenant conveys to a stranger pending the suit, such a possession will not be regarded ; but where there is a possession under an adverse title, it will be protected in chancery upon an examination *pro interesse suo : 1 Dan. Ch. Prac.* 644. In this Commonwealth, where the adverse possession is held in good faith, and has not been acquired pending the suit, no court would disturb it by any summary process. The right of trial by jury would stand in the way of such a proceeding. It is not reasonable to suppose, that the legislature intended to involve sequestrators in the endless litigation which might flow from the sequestration of mere rights in action to life estates. It is true, that the act authorizes the sequestrator to sell the debtor's right; but if his estate is in such a condition that it must necessarily be sold, there is no reason why the sale should not be made by the sheriff. We are of opinion, that the Act of 1840 does not require the appointment of a sequestrator, where the life estate of the debtor is claimed by one in actual adverse possession.

If a life estate is not the subject of sequestration when the land is held adversely by a stranger, there is still less reason for such a proceeding, when the life interest is disclaimed and repudiated by the debtor himself, under a claim to hold the premises in.fee. The creditors are entitled to the value of the debtor's estate, whatever it may be. It is no part of the policy of the law to throw obstacles in their way. Where it is doubtful whether the debtor's interest is a life estate, or some other or greater estate, what is the creditor to do ? If he sequester it as a life estate, he deprives himself as well of the debt as of the advantage of trying the debtor's title to the fee. If he sell it as a fee simple, he precludes himself from sequestering it as a life estate. For it cannot be supposed that the court would permit him to blow both hot and cold in the same breath. In such a case, the advantage to all parties of a sale of the debtor's interest, whatever it may be, is so obvious, that we have no hesitation in declaring it to be the proper course. In that method the debtor and creditors get the full benefit of the debtor's interest, and the purchaser, knowing that he gets a life estate at least, with the advantage of a greater estate if he can establish it by evidence, will of course bid a fair price. In the case before us, the debtor had been in possession more than 21 years, under a claim in fee simple, by virtue of a parol sale from his father, accompanied with valuable improvements. Both before and after the will, he claimed the fee simple, and denied his father's right to limit him to a life estate. Under such circumstances, the creditors surely had a right to try his title to the fee simple, in the way most beneficial to all parties. That method was adopted without objection by any one, and we see no objection to it now. The debtor himself has surely no ground to complain.

[Gordon *et al. v.* Inghram.]

The second and third points of the defendant below should have been answered in the affirmative. Under the evidence, as presented on the paper-book, the court might very properly have given a peremptory instruction against the plaintiff below.

Judgment reversed, and a *venire facias de novo* awarded.