## Lawrence, Appellant, v. Keener.

*Life-estate—Sheriff's sale—Act of January 24, 1849—Notice.*

Sequestration of a life-estate in realty is unnecessary where there is an adverse possession in hostility to it; or where the debtor claims to hold in fee; or where the creditor has reasonable ground to believe that the debtor owns in fee. In all such cases the defendant's interest in the land may be sold on an ordinary execution without complying with the requirements of the act of January 24, 1849.

*Married women—Real estate—Resulting trust—Evidence—Declarations.*

Where real estate standing in the name of the husband has been sold at sheriff's sale as his property, and, in ejectment against him, he sets up a resulting trust in favor of the wife by reason of her payment of the purchase money, the wife having died intestate before the sheriff's sale, he cannot testify as to what his wife said about the ownership of the land while he was in possession of it with her; nor is evidence admissible of her declarations to a third person as to her having property.

*Notice.*

In such a case, where there was no evidence that the wife exercised

acts of ownership over the property, and no allegation of her ownership appeared to have been made by anyone until her husband's creditors began to press him; and there was evidence of her husband's claiming the property as his own and that she had no interest in it; *held,* that a notice read at the first sheriff's sale that the property belonged to the wife or her heirs, of which notice the purchaser at the second sheriff's sale was informed, (the purchaser at the first sheriff's sale not having complied with the terms thereof,) was not sufficient to prevent the purchaser at the second sale taking the title of the husband, whatever it was.

Argued May 9, 1892. Appeal, No. 39, July T., 1890, by plaintiff, Messmore Lawrence, from judgment of C. P. Fayette Co., March, T., 1888, No. 300, on verdict for defendant, Daniel F. Keener. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment.

On the trial before EWING, J., the plaintiff offered in evidence a deed to himself for the premises in question from Thos. Hemstead and wife, dated April 3, 1866, and recorded the same year. The plaintiff testified that he went into possession of the property under the deed and had his wife and four children there. Defendant then showed title under a sheriff's deed on a judgment against the plaintiff in favor of Chas. A. Seaton at March term, 1877. It was admitted that possession was obtained by R. H. Lindsey, the purchaser at the sheriff's sale and the vendor of defendant, by proceedings before a justice of the peace after the sale. In rebuttal, plaintiff testified that the property was purchased with the money of his wife and the deed made to him "more by accident than anything" he knew of; and that his wife was not present when it was made. Plaintiff's counsel then offered to ask him what his wife said about the ownership of the land at the time he was in possession of it together with her. This evidence was ruled out. [3] The court also refused to permit witness, J. Calvin Lawrence, to testify in regard to declarations of plaintiff's wife as to her having property. [7] In rebuttal, defendant offered in evidence the article of agreement of Nov. 30, 1865, between Thos. S. Hempstead and the plaintiff for the premises in question. [8] Defendant also offered in evidence statements by plaintiff to two persons from whom he borrowed money in 1872 and about 1876, that plaintiff claimed to be the owner of the property, he having said to one of them "that his wife had nothing in

it." [9, 10]   Also evidence of a request by plaintiff to witness Franks in 1874 or 1875, to notify a tenant on the premises to give possession because plaintiff had sold the property to a Mr. Sessler. [11]   It appeared from the evidence that Jane Lawrence, the wife of the plaintiff, had died in 1873, leaving four children.   It also appeared that the premises in question were twice sold by the sheriff.   The first sale was in May, 1878, on a fi. fa., inquisition and condemnation having been waived in the judgment; at this sale, a notice was read by an attorney that the property was not the property of the plaintiff, but of Jane Lawrence, his wife, or her heirs.   Isaac Messmore purchased at this sale, but was unable to comply with the terms of sale, and the property was again sold in Sept. of 1878 under a vend. ex. to R. H. Lindsey, the attorney for the plaintiff in the execution, who had been informed of the notice read at the first sale.   It further appeared that plaintiff and his wife had sold a part of the land to certain school directors, the deed being made from the deed to him ; and that the plaintiff had sold the premises to Thos. Sessler, about the time his wife died, as his own property, and had brought suit against Sessler in his own name for not taking it.

The charge of the court below was as follows :

" These several actions now on trial are ejectments brought by the plaintiff, Messmore Lawrence, against the respective defendants for the recovery of portions of the tract of land of seventy-seven acres sold as the property of the plaintiff in 1878 by the sheriff, upon processes issued against him by Chas. S. Seaton, cashier of the Dollar Savings Bank of this place, on a judgment he held against him, and at that time sold to Mr. Lindsey, and since by him sold in part to the respective defendants in these cases.   The contention of the plaintiff here is that his interest in this land, now divided and held by these three defendants, was but a life estate, and that the execution creditor, upon whose process the land was sold, did not pursue the course prescribed by the act of assembly for the sale of life interests in real property, but that it was sold upon process issued as in the case where a debtor owns the land in fee, and that, by reason of the failure of that execution creditor thus to follow the course described by the act of assembly for the sale of a life interest, the purchaser at that sale took no estate, but left still

in the plaintiff in this case his life estate in that land, and on that ground he seeks to recover this land. It has been held by the Supreme Court of this state, that it is not necessary to follow the course prescribed for the sale of life interests where the debtor in the execution claims to own the fee in the property sold, or where the execution creditor has reasonable grounds to believe that he does own the fee. In two cases at least they hold that the ordinary process of execution, as against property held in fee, may be pursued and sale made, even although only a life estate is owned by the defendant in the writ, and that such sale would pass his interest, even though it be such life estate. Now, in this case, it is admitted that the plaintiff in this present suit did claim to be the owner in fee of this land from the time of its purchase from Mr. Hempstead in 1866 up to and including the day of the sale, that a deed was made to him for this land by Mr. Hempstead when it was first purchased in 1866, and placed upon record that same year, and that that was notice to the public, generally, that the title to this property was in him. Upon the ground of his claiming to own this land in fee, as also upon the ground of this record notice of the title being in him, the defendants now say that they were justified in making the sale of this property in the way they did, and it passed whatever title the plaintiff had in the land at that time by reason of his adverse claim, or his claim to the possession in fee of this land, and also that they had by reason of this record notice of this title being in him, a reasonable ground to believe that he did own the fee, and upon these grounds they ask that the verdict in this case be for the defendant, as it is unnecessary, under the decision that I have referred to, to pursue any other course in making the sale than they did pursue.

" As against this it is claimed on the part of the plaintiff, that notwithstanding this record notice of title in the plaintiff in this action, and notwithstanding his adverse claim as the owner of the fee of this land, that at the sheriff's sale, the first time the land was offered for sale under the writ issued upon the judgment upon which the sale was finally made, notice was given that he was not the owner in fee, but that the land was owned by the heirs of his wife, her money having paid for the property, and he claims now that that notice having been given

was sufficient notice to the execution creditors, to the purchaser at that sale, and to the present defendants, now holding under such purchaser, that the land was not owned by the plaintiff, that his interest in it was but a life estate, and that therefore they were obliged in making the sale to pursue the course prescribed by the act of assembly for the sale of life estates. [The fact is that the notice given at the time that this land was first offered for sale under the writ issued upon this judgment was given, not by the plaintiff in this action, but by some person representing the children of his deceased wife—the heirs of his deceased wife—and was given at a time when this land, if owned by the plaintiff, had already been greatly incumbered by the judgments entered by his various creditors, and considering the circumstances under which the notice was given, being when the man was involved, his creditors were pursuing him for the collection of their claims, and given on a claim made in behalf of those representing the interest of his wife, the defendants now say that it is not such notice to them, by reason of those circumstances, as would preclude them from relying upon the record notice of the title being in him, and absolutely upon the adverse claims which he had constantly made to the ownership in fee of this property, and as I entertain the same view in regard to that as the defendants do, and believe that from the undisputed facts in this case they had a right to rely upon the adverse claims made by the plaintiff as against the interest of his wife—claiming himself to own this land in fee, and also had a right as against such notice to rely upon the record evidence of his title and his constant occupancy of the land under the adverse claim of title, we direct you to render a verdict for the defendants in this action."] [12]

*Errors assigned* were (1, 2, 4–6, abandoned), (3, 7) exclusion of evidence as above, quoting the bill of exceptions; (9–11) not sustaining plaintiff's objection to evidence as above, quoting the bill of exceptions and the evidence; (12) the charge of the court as above in brackets, quoting it; (13) that the charge as a whole failed to give the proper force and effect to the notice at the sheriff's sale that the title was in Jane Lawrence.

*Edward Campbell*, with him *T. B. Searight* and *R. P. Kennedy*, for appellant.—Before the passage of the act of Janua-

ry 24, 1849, life estates could not be taken and sold under any writ of execution : Snyder v. Christ, 39 Pa. 507 ; Com. v. Allen, 30 Pa. 49 ; Kintz v. Long, 30 Pa. 501 ; Hill v. Epley, 31 Pa. 331.

Mr. Lindsey, the sheriff's vendor, had notice before he bought that the title to the land was in the children of Jane Lawrence. He took no title under the sheriff's sale. The fee did not pass because it did not belong to the defendant; and the life estate did not pass because the act of assembly providing the manner of selling estates for life in land was not pursued.

Mr. Lindsey, in view of the notice which he had, cannot avail himself of the record of the deed in the name of the plaintiff : Sill v. Swackhammer, 103 Pa. 7.

The declarations of Jane Lawrence as a claimant in possession should have been received : Feig v. Meyers, 102 Pa. 10.

The waiver in the judgment of inquisition and condemnation did not authorize the issuing of the vend. ex. without complying with the terms of § 4 of the act of January 24, 1849, requiring an application to the court and notice to the life tenant : Conard v. Edwards, 7 C. C. Rep. 342.

*R. H. Lindsey,* for appellee.—As his wife was dead intestate and he therefore inherited an interest in her real estate, the plaintiff was an incompetent witness to prove her ownership : Boustead v. Cuyler, 116 Pa. 554 ; Bitner v. Boone, 128 Pa. 567 ; Daisz's Ap., 128 Pa. 572 ; Earnest's Ap., 15 W. N. C. 22.

No resulting trust was established by the evidence ; giving the fullest effect to the testimony offered by the plaintiff, it shows no more than a loan by the wife to the husband : Crawford v. Thompson, 142 Pa. 556 ; McGinity v. McGinity, 63 Pa. 38 ; Nixon's Ap., Id. 279 ; Lingenfelter v. Richey, 62 Pa. 123 ; Kistler's Ap., 73 Pa. 393 ; Earnest's Ap., 15 W. N. C. 19 ; Act of 22d April, 1856, P. L. 552.

But whether Mrs. Lawrence was the owner or not does not really arise in the present case. The true question is, whether or not the lien creditors of her husband had reasonable grounds to believe that he owned the fee. If so, they had a right to levy on his interest and sell it : Gordon v. Inghram, 32 Pa. 217.

PER CURIAM, May 23, 1892 :

We find nothing to criticise, either in the rulings of the court below upon questions of evidence, or in the charge to the jury.

The title of the plaintiff to the land in question was sold by the sheriff in 1878. He now claims that he was not the owner in fee at the time of the sheriff's sale, but that there was a resulting trust in favor of his wife, the effect of which was to leave him but a life estate; that said life estate still remains in him because of the failure of the execution creditor to pursue the method prescribed by the act of Jan. 24, 1849, providing for the sale of life estates in land. There was nothing upon the record to indicate that the plaintiff's title was limited to a life estate, or to show a resulting trust in his wife. There is not the slightest evidence that she ever exercised any acts of ownership over the farm in any way, and no allegation of her ownership appears to have been made by anyone until her husband's creditors began to press him for the payment of their claims. There was evidence that the plaintiff claimed the property as his own, and asserted that his wife had no interest in it. Under the circumstances, we are of the opinion that his creditors had a right to take him at his word, and were justified in selling the property in the manner they did, and that said sale cut up his title by the roots. In Gordon v. Inghram, 32 Pa. 214, it was held that, under the act of Oct. 13, 1840, the sequestration of a life estate is unnecessary, where there is an adverse possession in hostility to it; or where the debtor claims to hold in fee; or where the creditor has reasonable ground to believe that the debtor owns the fee. In all such cases the defendant's interest in the land may be sold on execution. If we allow the plaintiff to blow hot and cold in the same breath, he can object to a sale, whether it be of the fee or of his life estate. Creditors have rights as well as debtors, and if the debtor misleads his creditors by claiming to own the fee, he has no reason to complain that they take him at his word, and sell his interest, whatever it may be.

Judgment affirmed.