## DuFour *v.* Bubb, Appellant.

*Will—Estate for life—Issue—Children—Rule in Shelley's Case.*

Testator gave, devised and bequeathed to his three children separately "a house and lot, for a homestead for life, to be worth $10,000 each." He then directed that his executor should invest the sum of $30,000 "in the purchase of said three lots and houses, as homesteads for said three children." He further directed as follows: " My said executors shall convey the titles to the houses and lots, so acquired by them, to the trustees as hereinafter provided, designating for which child each lot is conveyed, and the title to said lot, so vested in the trustee, shall be held by him in trust separately for each of said three children, and the wife or husband of each as the case may be, for and during the term of each of their natural lives, and the remainder, in trust, for the lawful issue of such child, until the youngest living of such issue attains the age of twenty-one years, when the trust shall cease and the title to such lots shall be conveyed to such issue, as tenants in common, and in default of such issue such remainder shall go to my grandchildren, share and share alike, and in case of the death of any grandchildren having lawful issue, the share of such deceased parent shall go to such issue." *Held*, that the children took an equitable life estate in the lot and house devised to each of them.

*Life estate—Execution—Sheriff's sale—Act of January 24, 1849, P. L. 677.*

The act of January 24, 1849, provides the manner in which a life estate may be sold. It cannot be sold on a fi. fa. but may be on a vend. ex. after ten days' notice to the lawful tenant and by leave of court. Unless these prerequisites are complied with, the sale is void and confers no title on the purchaser. The act has no application where there is an adverse possession in hostility to the life estate, or where the debtor claims to hold in fee, or where the creditor has reasonable ground to believe the debtor owns in fee, but the reasonable ground of belief must be based on facts and not upon legal conclusions.

Argued March 14, 1901. Appeal, No. 262, Jan. T., 1900, by defendants, from judgment of C. P. Lycoming Co., Dec. T., 1898, No. 268, on trial by court without a jury in the case of Mary H. DuFour and William M. DuFour v. N. B. Bubb and Fred M. Allen. Before McCollum, C. J., Mitchell, Fell, Mestrezat and Potter, JJ. Affirmed.

Ejectment for a house and lot in Williamsport.

The case was tried without a jury by Metzger, P. J., who filed the following opinion:

This is an action of ejectment brought by the plaintiffs to recover a lot of land in the possession of the defendants, situate in the fifth ward of the city of Williamsport, county of Lycoming and state of Pennsylvania, bounded on the north by West Third street, on the south by an alley, on the east by a vacant lot, and on the west by lot of the late Samuel Jones, deceased, containing fifty feet front on said West Third street and 150 feet in depth to said alley, and having thereon erected a three-story brick dwelling house, known as 761 West Third street. The defendants claim the title and right of possession to said property by virtue of a sheriff's sale made by the sheriff of Lycoming county, in pursuance of a writ of venditioni exponas issued out of the court of common pleas of Lycoming county at the suit of the Lycoming National Bank v. W. M. DuFour and Mary H. DuFour, on judgment of said bank against the defendants, entered in said court of common pleas to No. 9, September term, 1897. Said sale was made on December 1, 1897, and at said sale said N. B. Bubb became the purchaser and put F. M. Allen, the other defendant, into the possession thereof, who holds under him as tenant. The plaintiffs claim that the said sheriff's sale is invalid and passed no title whatever to the purchaser at said sale. They claim the right of possession thereto by virtue of the last will and testament of Mahlon Fisher, the father of Mary H. DuFour, who died in 1875, alleging that by the terms of said will the defendants took, at most, a life estate in said property; and that the sheriff's sale was invalid because the venditioni exponas in this case was issued without leave of the court, and ten days' notice to the life tenant was not given as provided by the act of January 24, 1849. On the part of the defendants it is contended that said sheriff's sale was a valid sale, first, because under the provisions of said will the said plaintiffs took an estate in fee; secondly, that if they did not take such an estate in fee, and took a life estate only, the sale would still be regular, because the plaintiffs in the writ had reasonable grounds for believing that Mary H. DuFour, one of the defendants, owned the fee, and, therefore, the plaintiff was not required to follow the provisions of the act of assembly relating to the sale of life estates. Defendants further claim that exceptions having been filed to the acknowledgment of the sheriff's deed, and the court in

disposing of said exceptions and ordering the sheriff to acknowledge the said deed and deliver the same to the purchaser, the court, C. R. SAVIDGE, P. J., specially presiding, among other things having stated in his opinion that " whether the interest of Mrs. DuFour is a life estate or a fee it is not necessary now to decide ; we are satisfied the plaintiff had reasonable grounds for believing she owned the fee," adjudicated the right to make the sale in the same way as if the estate was a fee. To which the plaintiffs reply that the only question before the court was the acknowledgment of the deed, and that there were no facts in evidence upon which to base any opinion on the subject ; and that nothing was adjudicated except the order of court directing the acknowledgment of the deed, and that this, under the circumstances, could neither affect the regularity of the sale nor the title to the premises.

The question to be determined by the court is whether the sheriff's sale is valid and passed any title or right of possession to the purchaser. Whether the estate would be held to be a fee simple or a life estate would be immaterial so far as this action of ejectment is concerned, if the sheriff's sale was regular, and would in the manner in which it was made pass the interest of the plaintiffs in the property in controversy.

We find the following facts in this case :

1. That at the time of the service of the writ of ejectment the defendants were in possession of the property in controversy, said N. B. Bubb having become the purchaser at a sheriff's sale of the same, and Fred M. Allen, the other defendant, was in possession thereof as tenant under him.

2. That said sheriff's sale at which said N. B. Bubb became the purchaser was made by virtue of a writ of vend. ex. issued out of the court of common pleas of Lycoming county on a judgment of the Lycoming National Bank against W. M. DuFour and Mary H. DuFour, the plaintiffs in this case, the property being levied upon and sold as the property of Mary H. DuFour and William M. DuFour, or either of them, being described in the levy as follows : " All the right, title and interest of Mary H. DuFour and William M. DuFour, or either of them, in and to all that certain lot of land situate in the fifth ward of the city of Williamsport, county of Lycoming and state of Pennsylvania, bounded on the north by West Third street, on the

south by an alley, on the east by a vacant lot, and on the west by lot of the late Samuel Jones, deceased, containing fifty feet front on West Third street, and one hundred and fifty feet in depth to said alley, and having erected thereon a three-story brick dwelling house, known as 761 West Third street."

3. That objection was made by the plaintiffs in this case to the acknowledgment of the sheriff's deed, which was overruled by the court, and the sheriff ordered forthwith to acknowledge and deliver the deed to the purchaser; and that the sheriff did thereupon acknowledge said deed and deliver the same to the said N. B. Bubb, purchaser.

4. That the writ of vend. ex. upon which the sale was made in this case was issued without leave of court, and no notice was given of any application for such writ to the plaintiffs, as life tenants of said real estate, as whose property the same was sold, and the requirements provided for by the act of January 24, 1849, relating to the sale of life estates by the sheriff, were not complied with, but the sale was made in the same manner as it would be if the plaintiffs in this case were the owners of the fee.

5. There was no adverse possession in hostility to the life estate, and the plaintiffs, who were the defendants in the writ, did not and do not now claim to hold in fee, nor is there any evidence in this case proving or tending to prove any facts from which we could find that the plaintiffs in said writ had any reasonable ground to believe that the defendants in said writ, who are the plaintiffs here, held said property in fee; and we are, therefore, constrained to find, as a matter of fact, that they had no reasonable ground for believing that said property was held in fee by them, or either of them.

6. Mary H. DuFour, one of the defendants, is the wife of W. M. DuFour, the other defendant, and is the daughter of Mahlon Fisher, who died in 1875, leaving a last will, of which one part, item second, is as follows, namely: " I give, devise and bequeath to my son John S. Fisher and to my son William S. Fisher, and to my daughter Mary H., wife of William DuFour, and each of them separately, a house and lot, for a homestead for life, to be worth ten thousand dollars each. The title to said lots shall be acquired, held and enjoyed by them as herein provided, namely: I direct that my executors

shall, within three years after my decease, invest the sum of thirty thousand dollars from the income of my estate in the purchase of said three lots and houses, as homesteads for said three children, in this item of my will named. And that my said executors shall convey the titles to the houses and lots so acquired by them to the trustee as hereinafter provided, designating for which child each lot is conveyed, and the title to said lot so vested in the trustee shall be held by him in trust separately for each of said children and the wife or husband of each, as the case may be, for and during the term of their natural lives, and the remainder, in trust, for the lawful issue of such child, until the youngest living of such issue attains the age of twenty-one years, when the trust shall cease, and the title to such lot shall be conveyed to such issue, as tenants in common, and in default of such issue such remainder shall go to my grandchildren, share and share alike, and in case of the death of any grandchild having lawful issue, the share of such deceased parent shall go to such issue."

7. By deed dated October 2, 1882, and recorded in deed book No. 94, page 417, John G. Reading, executor of the will of Mahlon Fisher, conveyed to John B. Otto a certain lot of ground in the fifth ward of Williamsport upon the uses, intents and purposes expressed and contained in the second item of said will; said John B. Otto having been appointed trustee by the court under and in pursuance of the provisions contained in the said last will and testament of Mahlon Fisher. The said lot of ground so conveyed to John B. Otto, as aforesaid, being the same lot of ground now in controversy, and said conveyance being in trust for Mary H. DuFour and her husband, or any future husband, for and during the term of their natural lives, and the remainder upon the uses and trusts, as contained in said second item of the will of said Mahlon Fisher, deceased.

8. The plaintiff, Mary H. DuFour, by her husband, William M. Dufour, has lawful issue now living, and has grandchildren, and there are other grandchildren living of said Mahlon Fisher, deceased.

We find the following conclusions of law: First, that under the provisions of the last will and testament of said Mahlon Fisher the plaintiffs in this case took only a life estate, and had no greater or other estate at the time of the sheriff's sale at which

N. B. Bubb became the purchaser. Second, that the said sheriff's sale was invalid and passed no title to the purchaser. Third, that the order of court directing the acknowledgment of the sheriff's deed has no relevancy on the question of title in this case. Fourth, whether the creditor had reasonable grounds for believing that the defendants in the writ owned the fee is a conclusion to be drawn from facts and circumstances and not a mere legal conclusion drawn from the construction of a legal instrument.

The chief question in this case arises under the construction to be given to item second of Mahlon Fisher's will, which item is set out in our first finding of fact. Did Mrs. DuFour take a fee under said item? If so, then there could be no question that her title was wholly divested by the sheriff's sale. Is the devise within the rule in Shelley's Case? If it is in effect a devise to Mrs. DuFour and her husband for life, with remainder to her lawful issue, it comes strictly within that rule. The rule is that, "when an ancestor, by gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee, or in tail, 'the heirs' are words in limitation of the estate, and not words of purchase." In Kleppner v. Laverty, 70 Pa. 70, and by a long line of decisions of the Supreme Court, it is held that the word "issue" in the law means "heirs of the body," and in general is a word of limitation. Therefore, the devise to one for life, with remainder to his or her lawful issue, clearly creates a fee tail, which under the act of 1855 becomes a fee simple. But in the same case above referred to, and in the case of Hestor A. Grimes v. A. R. Shirk, Appellant, and many other cases which we might cite, it is held that this word "issue" is only prima facie a word of limitation synonymous with "heirs of the body," and may be rebutted where an unequivocal intent to the contrary appears from the face of the will. "If there be on the face of the will sufficient to show that the word was intended to have a less extended meaning and to be applied only to children, or descendants of a particular class, or at a particular time, it is to be construed as a word of purchase and not of limitation in order to effect the intention of the testator."

After carefully studying the provisions of this will, we think

we find enough upon the face of it clearly to indicate that the word "issue" used by the testator was not intended to be synonymous with "heirs," but was clearly meant to be restricted to children. The whole purpose of the testator was to preserve the estate for his grandchildren, as he provided that "in default of such issue such remainder shall go to his grandchildren, share and share alike." For the purpose of preserving it so that it must ultimately vest in his grandchildren, he has provided for the appointment of a trustee in whom the title to said property is vested, and who is to hold it in trust separately for each of said children, and the wife or husband of each, as the case may be, for and during the term of each of their natural lives, and the remainder, in trust, for the lawful issue of such child, until the youngest living of such issue attains the age of twenty-one years; then, and not till then, shall the trust cease, and the title to such lots shall be conveyed to such issue, as tenants in common. None of the three children named in said last will of Mahlon Fisher, deceased, acquired any legal title to the property devised, even for life, the legal title being vested in the trustee, and to continue in him not only until the decease of the life tenant, but until "the youngest of the issue shall be twenty-one years of age." The trust in this case is an active trust, having for its principal purpose the preservation of the estate to secure to his children therein named a homestead, as expressed by him, for life, and then at a certain time, to wit: when the youngest of the issue, by which he undoubtedly meant when the youngest child, being his grandchild, should attain the age of twenty-one years, the legal title was to vest in the issue. It will thus be seen that the legal title might not vest in the issue or grandchildren until long after the decease of the life tenant. Further, it could not vest in the issue of the deceased child of the testator until after the death of the husband or wife of such child, as the case might be. The title that is to vest in the issue is postponed not only until after the death of the parent, who was the child of the testator, but also until the death of the husband or wife of such parent, and if upon the death of the survivor the youngest of the issue was not twenty-one years of age, the title would not then vest, but would be still further postponed until the youngest of such issue was twenty-one

years of age. All that the children of the testator had was an equitable life estate in the property. The legal title never could vest in the parents. It is, therefore, plain to our mind that Mrs. DuFour took at most but an equitable life estate in the premises. Whether the estate she had could be incumbered or sold by her is extremely doubtful.

It would seem that the plain purpose of the testator was to secure a home for the children named, during the term of their natural lives. He therefore plainly states that such a lot is to be for a homestead for life, and for this purpose he directs his executors to purchase from the income of his estate three lots and houses, as homesteads, for his three children. It would look, therefore, as if by the creation of a trust he intended that his children should not be able by incumbrances or alienation to incumber or dispose of the property. We do not, however, deem it necessary to take that view of this case, inasmuch as under the view we take of it, even if they had a life estate, their title to the same did not pass by the sheriff's sale to the purchaser.

It will be seen by an examination of other portions of the will of Mahlon Fisher, deceased, that he, at least in some items of the will, used the words "issues" and "children" interchangeably as synonymous, and also that his principal purpose seemed to be to prevent his children from squandering his estate and to preserve it for his grandchildren. This also throws some light on the meaning of the language used by him in the item of his will which we have been discussing.

Assuming that the plaintiffs in this case had a life estate, was the sheriff's sale regular and valid? It is not contended by the defendants that the sale was made in the manner provided for by the act of assembly for the sale of life estates by the sheriff, but they contend that they had reasonable grounds for believing that the plaintiffs did own the fee. No facts are shown, as we have found, warranting such an inference, but it is alleged by them that under the provisions of said will of Mahlon Fisher, and the papers in evidence in this case, a grave doubt as to whether they took a fee or a life estate existed, and that according to their construction of the said last will and testament the plaintiffs took a fee. It is true that where there is adverse possession in hostility to it, or where the debtor

claims to hold in fee, or where the creditor has reasonable ground to believe that debtor owns the fee, in such case the defendant's interest in the land may be sold on execution without complying with the requirements of the act of January 25, 1849.

Gordon v. Ingraham, 32 Pa. 214; Lawrence v. Keener, 149 Pa. 402; Lewis's Estate, 170 Pa. 378. In all these cases we find the facts to have been such that it warranted the creditor in concluding that the debtor had more than a life estate. Assuming the facts to be such in a given case that it would be difficult to determine whether the estate of the debtor was that of a fee or a life estate, we think this might be sufficient to justify the creditor in proceeding to make sale in the ordinary way. But we know of no case, and cannot believe it will ever be held so by any court, that any doubt as to the character of the title will avail which is not based upon facts, such as the acts of the parties, or their declarations, or the manner of their use of the property, or some such facts which might mislead the creditor. In this case it is not pretended that the debtor ever claimed to own the fee, or that he occupied it adversely to the life estate, or that he or she did any act, or used any language from which any inference could be drawn that they had any estate greater than a life estate. The reasonable grounds the defendants contend they had for believing it to be a fee is the construction which they gave to the will of Mahlon Fisher. We do not think that a legal doubt of title which one might raise by the construction of a paper is sufficient to excuse the creditor from pursuing the remedy provided for by the act of assembly for the sale of life estates. Every man is presumed to know the law, and we think that the excuse of a legal doubt being raised by the last will and testament of Mahlon Fisher, deceased, in such case will not prevail. No blame can be attached to the defendants for pursuing the course they did in this case if they thought that the will gave the plaintiffs in this case the title to a fee simple, and if it turns out that they are wrong in their construction of the will, they are not without remedy, as this will not prevent them from making a proper sale of the property in dispute in accordance with the provisions of the act of 1849. The facts stated in the opinion of the court in making the order for the acknowledgment of the deed are based upon no evidence whatever, and

the order of court could not affect the title of the parties. This could only be determined in an action of ejectment, and for that reason perhaps there is no appeal from such an order.

And now, to wit: April 13, 1900, it is ordered that judgment be entered in favor of the plaintiffs for the land described in the writ, unless exceptions be filed within thirty days, in accordance with the act of assembly.

The court dismissed exceptions filed to the opinion and findings of the court.

*Error assigned* was the judgment of the court.

*C. LaRue Munson,* with him *Addison Candor,* for appellants. —Mary H. DuFour took title in fee simple under the rule in Shelley's Case and the act of 1855 : Grimes v. Shirk, 169 Pa. 74; Sheeley v. Neidhammer, 182 Pa. 163; Doebler's App., 64 Pa. 9 ; Physick's App., 50 Pa. 128 ; Potts's Appeal, 30 Pa. 168; Haldeman v. Haldeman, 40 Pa. 29; Nice's Appeal, 50 Pa. 143; Ogden's Appeal, 70 Pa. 501 ; Phila. Trust, etc., Co.'s Appeal, 93 Pa. 209; Hoff's Estate, 147 Pa. 643; Hemphill's Est., 180 Pa. 95; Little v. Wilcox, 119 Pa. 439; Kleppner v. Laverty, 70 Pa. 70; Serfass v. Serfass, 190 Pa. 484; McCann v. McCann, 197 Pa. 452.

The purchaser took by the sheriff's sale whatever estate Mrs. DeFour had in the property: Gordon v. Ingraham, 32 Pa. 214; Lawrence v. Keener, 149 Pa. 402; Lewis's Est., 170 Pa. 376.

*James B. Krause,* for appellee.—Mrs. DuFour took a life estate: Yarnall's App., 70 Pa. 335; Kleppner v. Laverty, 70 Pa. 73 ; Moser v. Dunkle, 1 Woodward's Decisions, 388 ; Leightner v. Leightner, 87 Pa. 144; Taylor v. Taylor, 63 Pa. 484; Robins v. Quinliven, 79 Pa. 333; Parkhurst v. Harrower, 142 Pa. 432; Nes v. Ramsay, 155 Pa. 628; O'Rourke v. Sherwin, 156 Pa. 285; Cote v. Von Bonnhorst, 41 Pa. 251; Doebler's App., 64 Pa. 9; Physick's App., 50 Pa. 128 ; Sheeley v. Neidhammer, 182 Pa. 163; Curry v. Patterson, 183 Pa. 238 ; Barnett's App., 46 Pa. 399; Wallace v. Denig, 152 Pa. 251 ; Rife v. Geyer, 59 Pa. 393; Mannerback's Est., 133 Pa. 342.

If we are right in our contention, then the purchaser at the sheriff's sale did not acquire any title: Datesman's App., 127 Pa. 328; Kintz v. Long, 30 Pa. 501; Snyder v. Christ, 39 Pa. 499.

OPINION BY MR. JUSTICE MESTREZAT, April 15, 1901:

The learned president judge of the court below, Judge METZGER, has, in his opinion, clearly and concisely found and stated all the facts of this case. The important question in the case requires a construction of the will of Mahlon Fisher, deceased, and a determination of what estate or interest thereunder his daughter, Mary H. DuFour and her husband, W. M. DuFour, took in the real estate embraced in this action. Judge METZGER held that Mrs. DuFour took an equitable life estate in the premises in dispute. He has supported his conclusions by a convincing argument and by the citation of pertinent authorities. We agree with the interpretation put upon the will of Mahlon Fisher by the court below. It was clearly the intention of the testator to give his daughter a life estate, and he expressed that intention by the language used in the will.

As Mrs. DuFour and her husband took a life estate in the property, the other question in the case is whether or not the purchaser at the sheriff's sale acquired their interest therein. The sale was made on a vend. ex. and the sheriff sold " all the right, title and interest " of the defendants in the land. No notice of an application to the court to direct the issuing of the writ was given the life tenants, and the writ was issued without permission of the court.

The trial judge found that there was no adverse possession of the premises in hostility to the life estate ; that the life tenants never claimed to hold in fee, and that as a matter of fact the plaintiffs in the writ on which the property was sold and who were the purchasers at the sheriff's sale had no reasonable ground for believing that the property was held in fee by the life tenants, or either of them.

The Act of January 24, 1849, P. L. 677, Purd. 850, provides the manner in which a life estate may be sold. It cannot be sold on a fi. fa. but may be on a vend. ex. after ten days' notice to the life tenant and by leave of court. Unless these prerequisites are complied with the sale is void and confers no title on the purchaser. It has been held, however, that the act has no application, and that the defendant's interest may be sold on an ordinary execution, where there is an adverse possession in hostility to the life estate, or where the debtor claims to hold in fee, or where the creditor has reasonable ground to be-

lieve the debtor owns in fee : Lawrence v. Keener, 149 Pa. 402; Kunselman v. Stine, 183 Pa. 1. The learned counsel for the defendants frankly concede that in the cases heretofore decided in which the creditor was permitted to pursue the ordinary writ in the sale of a life estate, the reasonable grounds were based on facts and not upon legal conclusions. Here the contention of the defendants is that a creditor should not be compelled to observe the requirements of the act of 1849 in selling a life estate where he has reasonable ground, based on legal reasons, to believe that the debtor is the owner of the fee. This branch of the case depends upon a solution of this question. The findings of fact by the trial judge have eliminated from the controversy the other reasons noted above for permitting a life estate to be sold on the usual execution.

A departure from the act of 1849 providing for the sale of a life estate has, as we have seen, been permitted where the creditor had reasonable ground to believe the debtor owns the fee. Facts were the basis of this belief in the cases hitherto presented for the consideration of this court. We can see no sufficient reason for extending the rule and permitting the creditor to disregard the act of 1849 by setting up his legal construction of the instrument creating the estate in the debtor. This would in many, and perhaps most, cases annul the provisions of the act. The enforcement of the statute would be made to depend upon the legal opinion of the counsel for the creditor. The doubt arising in the construction of the instrument would always be resolved in favor of a fee, followed by the issuing of the ordinary writ and the sale of the premises thereon. The result would be that life estates, owing to the uncertainty of what was being sold on the writ, would be sacrificed to the detriment not only of the life tenant but also of his creditors. The very object of the statute was to prevent such consequences and no construction should be given it that would defeat the beneficial purposes of its enactment.

The will of Mahlon Fisher was on record and open to the inspection of his creditor. He had an opportunity to know what estate Mary DuFour had in the premises he was about to sell. He knew, or could have known, that there was no adverse possession hostile to the life estate and that Mrs. DuFour claimed to be only a life tenant. These facts, if they did not aid him,

would not have misled him, in the construction of the will. Presuming that he knew the law there could have been no reasonable ground for him to believe that Mrs. DuFour owned a fee in the premises in dispute. When, therefore, he construed the will to give Mrs. DuFour a fee and undertook to sell it, " he acted upon his own judgment as to the defendant's title and takes the risk of its correctness:" Kunselman v. Stine, supra.

If the construction we have given the act works a hardship on the creditor, the fault is in the statute and the remedy is with the legislature. We should not by interpretation nullify an act of assembly passed for a laudable purpose. We are not at all certain, however, that our construction of the act prevents the creditor from availing himself of the life estate of his debtor by proceeding in accordance with the act of 1849. The learned judge of the court below suggests in his opinion that notwithstanding the proceedings already taken, the creditor may subject the life estate to the payment of its indebtedness. The question is not before us and we express no opinion upon it. We, however, suggest that before pursuing that course, the creditor should determine the character of the estate of Mary DuFour given her by the will of her father, and whether it can be reached by an execution under the act of 1849.

The assignments of error are overruled and the judgment is affirmed.